UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 2:12-CR-13-DCR-REW |
| | ) | No. 2:16-CV-38-DCR-REW |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JOSEPH A. WEIR, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Movant, Joseph Weir, is a federal inmate. DE #151 (Motion), at 1. On February 22, 2016,[1] Weir filed a *pro se*[2] motion, later supplemented, accompanied by a memorandum of law and three affidavits, under 28 U.S.C. § 2255. *See generally* DE ##151, 151-1, 151-2, 151-3, 151-4, and 161.[3] The Court granted, on particular terms, the Government's motion to find waiver of attorney-client privilege. DE #156 (Order). The United States responded in opposition. DE #163 (Response). The Court gave Weir the opportunity to reply, DE #157, but he did not. The matter is ripe for consideration. Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief (DE #151) and issue **NO** Certificate of Appealability.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Here, Weir affirmed under penalty of perjury that he placed the motion in the prison mailing system on February 22, 2016. DE #151, at 13.
[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).
[3] The District Court denied a second attempted supplementation. *See* DE ##164, 165.

1

## I.      BACKGROUND INFORMATION

On March 8, 2012, a grand jury indicted Weir for distinct kidnapping and bank robbery events, to wit: on charges of violating, on May 31, 2011, 18 U.S.C. §§ 1201(a)(1) and 924(c)(1) (Counts 1 & 2), and on December 5, 2011, §§ 2113(a) and (d), and 924(c)(1) (Counts 3 & 4). DE #1 (Indictment). After competency and suppression proceedings, Judge Reeves severed the sets of charges and assigned two jury trials. DE #66. Weir went through both trials, and the juries convicted on all counts. DE ##87, 113 (Jury Verdicts). Judge Reeves sentenced Weir, in a unified proceeding, on April 19, 2013. DE #122 (Sentencing Minute Entry). Movant received a total prison sentence of 711 months followed by a total 5-year term of supervised release. DE #124 (Judgment). Weir appealed; the Sixth Circuit affirmed. *United States v. Weir*, 587 F. App'x 300 (6th Cir. 2014). The Supreme Court denied a petition for a writ of certiorari. DE #147 (Order); *Weir v. United States*, 135 S. Ct. 1455 (2015). On February 22, 2016, Weir timely submitted a § 2255 motion to vacate. DE #151. The Government responded. DE #163. Weir did not reply. The motion stands ripe for review. The Court wholly rejects each of Movant's varied claims and recommends dismissal. No basis exists for a Certificate of Appealability.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if the subject sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief:

2

'(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III.   ANALYSIS

In his § 2255 motion, Weir (nominally) requests relief based on four allegations of ineffective assistance of counsel (IAC), though the claims have *numerous* subparts, often overlap, and raise other matters outside the IAC scope (*e.g.*, ground three's inclusion of a claim of cumulative error). All theories—whatever the basis—plainly fail under 28 U.S.C. § 2255.

3

A.        *Ineffective Assistance of Counsel (IAC)*

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. In the sentencing context, ineffective assistance "can result in *Strickland* prejudice because any amount of additional jail time has Sixth Amendment

4

significance." *Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012) (internal quotation marks, alteration, and citation omitted).

1.  Failing to Adequately Litigate the *Miranda* Question

First, Weir argues:

> Counse failed to investigate/argue a long drug abuse/mental health history and prior hadit of invoking "Mirana" rights, and willingness is overborne, as inhabition overcome at interrogation. In the attached affidavits (1-2) a pattern custom of Wer's habit to invoke "Miranda" rights when questioned; and a long history of drug abuse or mental health is evidenced. Weir had been up for many days using meth before arrest, and just minutes prior took pills, smoked marjuana, used heroin to come dw on 2-5-11. At the arrest, Weir rufused to give statements when Officer Alexander said he was wanted for questioning. Weir told police, he is "on bond" and has "an attorney." Pattern of invoking "Miranda" right is exibited. Weirs recent drug use or intoxication, metabolized after arrest, combined with untreated mental illness (ie bipolar). Weir's willingness would not have been overborne or inhabition against making admission to police would not have been reduced at interrogation on 2-6-11, two FBI agent Weir had no recollection of statement to police. While on drugs he asked if an attorney should be here and is undecided of making a statement w/ Detective West. The audio recorded him saying "God I high". The Government prejudiced the jury by saying that was inaudible, w/ no objection from counsel Howe Attorney failed to investigate or argue facts, or limit admissions of Weir in court or Jury deliberation, denied the Sixth Amendment right to fair trial.

DE #151, at 4 (all as in original). Weir provided further detail, of sorts, in the accompanying memorandum. DE #151-1, at 2-4. His first and second affidavits also concern these matters. DE ##151-2, 151-3. Weir's supplementation again addresses this issue. DE #161. The United States responded in opposition. DE #163, at 6-7.

This substantive claim (now repackaged as an IAC claim) has previously been rejected multiple times and still has no merit. The Court perceives Weir to make three categories of IAC claims here: (1) Counsel, Hon. Steven N. Howe, failed to investigate and argue Weir's drug abuse and mental health history; (2) Mr. Howe failed to

5

investigate or argue Weir's habit of invoking *Miranda* rights; and (3) Mr. Howe failed to argue that Weir's post-*Miranda* statements were involuntary.

"A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Such a highly exceptional circumstance is an intervening change in the law. *Id.* Weir points to no such circumstance here. A habeas court need not consider claims that were "raised and duly rejected in [Petitioner]'s direct appeal." *Myers v. United States*, 198 F.3d 615, 619 (6th Cir. 1999). Weir may not use § 2255 "to relitigate" issues already decided. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999).

The District Court and the Sixth Circuit both previously squarely rejected Weir's arguments concerning the *Miranda* issue. Because the underlying substantive allegations have no merit, Mr. Howe obviously was not ineffective in any way. "Counsel [is] not . . . unconstitutionally ineffective for failing to raise . . . meritless arguments." *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999). Regardless, substantively, Weir's assertions are wrong empirically. Mr. Howe did present information concerning Weir's drug abuse and mental health history to the Court, and he did exhaustively challenge and argue the *Miranda* issues.[4] The Court evaluates each.

Mr. Alerding, Defendant's first counsel, raised Weir's "many disorders," including bipolar disorder, ADHD, depression, and other "mental disorders" with the

---

[4] Weir makes much of criticizing Howe for not focusing on and developing Weir's "habit" of refusing to talk to police. The key in the suppression hearing was whether Weir validly waived on the date in question, so the probative nature of his prior practices is fairly slight. However, Howe certainly presented Weir's prior refusal, on at least one occasion, to the Court. This happened in briefing, DE #47, at 1 & 8, and in Weir's testimony, DE #71, at 42. Judge Reeves was well aware of and referenced the prior refusal. DE #67, at 2 & 7. The proof, whatever its weight, substantially was before the Court, hollowing Weir's criticism.

Court early in the case. DE #13 (Motion to determine competency). Counsel raised Defendant's mental-health-related hospitalizations and the extensive medical records. *Id.* Dr. Boutwell's extensive report was fully before the Court. DE #26. Following the competency evaluation, Mr. Alerding moved to withdraw, and the Court appointed Mr. Howe. Following a contested competency hearing, with Mr. Howe as counsel, and post-hearing record supplementation, the Court found Weir to be competent. DE #41 (Order); *see also* DE #58 (Competency Hrg. Transcript). Mr. Howe noted that "the issue of [Weir's] competency was raised, an evaluation was completed and a hearing was conducted." DE #163-1 (Affidavit). Weir's "mental health history was presented at that time and the Court found that he was competent to stand trial." *Id.*

Mr. Howe later filed a motion to suppress. DE #47 (Motion to Suppress). He stated:

> It is undisputed that Mr. Weir suffers from a drug addiction problem. This was part of his diagnosis in the competency evaluation. Mr. Weir had been using heroin[] for the days immediately preceding his arrest on February 5, 2012. He maintains that on that date he was under the influence of the narcotic.

*Id.* at 2. The motion quoted extensively from the interview videotape. *Id.* at 2-5. Mr. Howe drew the Court's attention to Mr. Weir's admission of "smoking weed" and taking prescription pills, as well as Weir vomiting and wiping his face free of heavy sweat. *Id.* at 5-6. Mr. Howe proceeded to argue that Weir's *Miranda* waiver was not knowing and voluntary and that Weir's confession was not voluntary. *Id.* at 7-9. Mr. Howe specifically argued the issue of Weir's sobriety during the interrogation. *Id.* at 8. Further, as to mental health, Howe expressly cross-referenced the competency evaluation and Dr. Boutwell's report and testimony. DE ##47, at 9; 71, at 83. Judge Reeves specifically stated his intent

7

to review the competency materials (which did encompass a complete history) in assessing the suppression motion. There is little more Howe could be expected to do to frame all of the waiver-assessment issues before the Court.

The District Court held an evidentiary hearing, DE ##62 (Minute Entry Order); 71 (Transcript), and denied the motion to suppress. DE #67 (Memo. Opinion & Order). The Court rejected each of Weir's arguments, including the sobriety-related ones. *Id.* at 7-8 (concluding that Weir "was 'sufficiently in touch with reality' and that his *Miranda* waiver was knowing and intelligent"); *id.* at 9 (concluding the waiver was voluntary because Weir "has not established that he was severely impaired, nor that Detective West suspected such a condition").

The Sixth Circuit wholly affirmed, rejecting *every one* of Weir's arguments. *Weir*, 587 F. App'x at 303-05. The Court of Appeals concluded that "Weir implicitly waived his [*Miranda*] rights." *Id.* at 304. The appeals court also explicitly considered and rejected Weir's sobriety argument: "Weir was sufficiently sober to knowingly and intelligently waive his *Miranda* rights." *Id.* The Sixth Circuit "disagree[d]" with Weir's argument that his prior ingestion of heroin rendered his confession involuntary. *Id.* Finally, the court agreed that "West did not know of Weir's alleged intoxication[.]" *Id.* at 305.

Mr. Howe, in the habeas affidavit, confirmed that he "filed a Motion to Suppress the statement given by Mr. Weir[.]" DE #163-1. Weir testified at the first trial, and he "presented his evidence concerning his sobriety at the time of the confession[.]" *Id.* Counsel confirmed he again "contested" "the issue concerning [Weir's] sobriety and statements" at both trials. *Id.* At the second trial, Mr. Howe presented other evidence

concerning these issues—including a video of the confession (in which the jury observed Weir's demeanor and communicative ability). *Id.*

On this clear and complete record, there is obviously no ineffectiveness. First, Weir cannot relitigate the underlying claim. *Myers*, 198 F.3d at 619; *Wright*, 182 F.3d at 467; *DuPont*, 76 F.3d at 110. Further, because the arguments are meritless (as the Sixth Circuit has already determined), and because Mr. Howe thoroughly raised them during the course of the investigation, Weir shows neither deficient performance nor prejudice. *Mapes*, 171 F.3d at 427.

Weir does not cite to the record concerning his allegation of prejudice concerning the "God I high" comment. The Court notes that a redacted DVD of the interview was in evidence. *See* DE #130 (Trial Tr.), at 13. Thus, the jury had the video and audio recording to judge for itself whether the contested statement was audible or inaudible. Judge Reeves specifically instructed the jury that the DVD—the recording—"is the evidence in the case" and that the transcript was only "a guide." *Id.* at 14-15. He told the jury that it must "rely upon what you see and hear and not what you read." *Id.* at 14. Regardless, any such prosecutorial comment obviously was immaterial to the voluntariness inquiry, given the District Court's and Sixth Circuit's rulings.

Weir further cites a litany of scattershot grievances with Mr. Howe, but none has merit. The Court has reviewed every transcript. Mr. Howe competently—indeed, zealously—argued in favor of suppression, both on sobriety-related and other grounds. For example, Weir lists a series of places he presumably received treatment and medicines he took. DE #151-2, at 2. The District Court was fully aware of Defendant's mental health history, via the competency report and counsel's briefing and argument.

Even if this list had been before the District Court, the outcome of the case obviously would not have changed. As another example, Weir faults Howe for not investigating "jail records to verify facts" and FBI 302 reports. *Id.* at 3. Nothing that Weir proffers that these documents would have contained would likely change or in any way affect the results of the proceeding. There, thus, was (at least) no prejudice and therefore no ineffectiveness.

Weir also argues that Howe "failed . . . to request an expert in behavioral science or in any field that could exam the petitioners overall state[.]" DE #161, at 4 (as in original). On this argument, Weir utterly fails to address *Strickland*'s prejudice prong. He does not show, at a minimum, that the result of his trial likely would have been different if counsel had called an expert. Weir does not proffer the desired expert testimony, submit an expert report, or demonstrate that the jury would not still have convicted or that the result of the proceeding otherwise would have been different in light of the other overwhelming proof of guilt. *See, e.g.*, *Jackson v. McQuiggin*, 553 F. App'x 575, 583-84 (6th Cir. 2014);[5] *Flick v. Warren*, 465 F. App'x 461, 464-65 (6th Cir. 2012).

Finally, Weir faults Howe for not requesting a second psychological exam. DE #161, at 5. This is utterly meritless. The Court had the full results of the first exam before it, and Weir does not explain what a second exam would have revealed to change the outcome of the trial. The Court likewise clearly perceives no *Strickland* error regarding any statements, about which Weir provides no details, concerning his uncle. *Id.*

---

[5] *Jackson*, and certain other cases that this Recommendation cites, were § 2254 cases. Their analyses also apply to a § 2255 theory. *See Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other."). Both statutes exist, in large part, to vindicate constitutional principles.

2.      Failing to Request Certain Jury Instructions and to Challenge Certain Jurors' Qualifications

Weir's next argument is the following:

> Counsel was ineffective for not requesting cautionary or curative jury instructions on prejudice at trial, as key to fair trial to limit deliberation on facts. Two prejudicial evidence issues arose at trial, requesting an instruction to limit jury deliberation to properly admitted testimony or facts within the Federal Rules of Evidence (FRE); Cautionary or curative instructions was required on: 1) The admission confession to Detective West is contested as involuntary by Weir, due to his judgement and willingness on 2-5-11 Weir stated "I have an attorney" when Officer Alexander told him he is wanted to questioning Det. West interrogated after inhabitions reduced by narcotics effect 2) Two jurors informed the court they had personal familiarity to victon Earnst after opening statements. Their out of court statements would prejudice the jury. A.) Juror #340 is Godmother to victoms nephew. B) Juror dismissed after arguments, had dated victoms son. It is probable, but impossable to know if prejudice from admission or juror familiarity would taint the properly admitted evidence, affecting the ascertainment of guilt. (See attachments)

DE #151, at 5-6 (all as in original). Weir provided further detail in the accompanying memorandum. DE #151-1, at 3-5. The United States responded in opposition. DE #163, at 8-9.

The gist of this argument, as far as the Court can tell, concerns the Court's treatment of Jurors 340 and 342.[6] The juror issue arose at the first trial. DE #128 (Trial Tr.), at 48. Juror No. 342 indicated in a note: "Worked with LeAnn, daughter approximately 30 years ago." *Id.* LeAnn is the daughter of witness and kidnapping victim Ernst. Juror No. 340 wrote, "LeAnn was married to my sister's husband's brother. Divorced years ago. This will not impact my ability to be objective." *Id.*

Mr. Howe immediately moved for a mistrial. *Id.* The Court indicated that there was no indication that "this information would affect either juror['s] ability to be fair and

---

[6] To the extent Weir argues that the admission of his confession was improper because it was "involuntary," this merely repeats the ground one claim and has no merit.

impartial." *Id.* Nevertheless, Judge Reeves voir dired both jurors. Juror 342 indicated the prior relationship with LeAnn could possibly affect her ability to be impartial. *Id.* at 49-50. Juror 340 said that the relationship with LeAnn would not in any way affect her ability to be fair and impartial to both sides. *Id.* at 53-54. Mr. Howe then renewed the motion for a mistrial. *Id.* at 56. The Court denied the motion for a mistrial but, out of an abundance of caution, excused Juror 342. *Id.* at 57. Judge Reeves specifically instructed both jurors not to discuss the conversations with any other member of the jury. *Id.* at 52, 55. The District Judge instructed the full panel "not to draw any inference" from the dismissal of one juror. *Id.* at 60. Later, Mr. Howe again renewed the motion for a mistrial based on the juror incident. DE #130, at 27. The Court again denied it. *Id.* at 31.

On appeal, the Sixth Circuit rejected Weir's argument on Juror 340 (there was no matter in controversy as to Juror 342 due to the District Court's excusal of her): "Weir fails to point to any clear and convincing evidence of Juror # 340's bias." *Weir*, 587 F. App'x at 305. Further, "the relationship at issue in this case (where the juror's sister's husband's brother had been married to the victim's daughter) is not sufficiently close to warrant" a finding of implied bias. *Id.* at 306 (assuming doctrine persists).

Weir asserts that it is "probable"—but "imposs[i]ble to know"—if either juror "taint[ed] the properly admitted evidence[.]" DE #151, at 5-6. The Court interprets this to argue that the jurors may have tainted, through potential comments, the entire panel. *See* DE #151-1, at 5 ("It is imposs[i]ble to determine what the juror[s] deliberated on; if bias of familiar jurors[] spilled over contaminating verdict?"). This argument is quintessential speculation. Weir supports it with utterly no proof, and he even concedes (twice) that it is impossible to know whether it occurred. The claim obviously fails; Judge Reeves

specifically instructed both jurors not to discuss the conversations with any other member

of the jury. *Id.* at 52, 55. The District Judge later instructed the full panel "not to draw

any inference" from the dismissal of Juror 342. *Id.* at 60. Courts assume that jurors follow

instructions, and Weir has in no way called that precept into doubt. *Shannon v. United

States*, 114 S. Ct. 2419, 2427 (1994). Both jurors brought the matters to the Court's

attention on day one of the trial, after the testimony of victim Ernst—the first trial

witness. Jury deliberations had not yet started—indeed, the trial had just begun. Weir has

not proven a basis for habeas relief on this ground.

Additionally, the District Court specifically defined the proper evidence field in

the case for the jury via instruction. DE #85 (Jury Instructions), at Instruction 4. Judge

Reeves gave the precise instruction Weir seeks (Sixth Circuit Pattern Instruction 7.17,

concerning transcriptions of tape recordings, *see* DE #151-1, at 4). DE #85, at Instruction

16. Judge Reeves gave the same admonitions concerning transcription when the

transcripts were distributed at trial:

> Ladies and gentlemen, before the DVD itself is played, I do want to advise
> you that you have been given a transcript. The transcripts are given to you
> only as a guide to help you understand what's being said. The DVD, in
> other words the recording, is the evidence in the case. If you notice any
> difference between what you hear or see on the recording and what you
> read in the transcript, then you must rely upon what you see and hear and
> not what you read. If you cannot hear or understand certain parts of the
> DVD as it's being played, you must ignore the transcripts as far as those
> parts are concerned. So, again, the evidence in the case is what you'll see
> and hear from the DVD. The transcript is only being used as an aide and is
> not evidence in the case.

DE #130, at 14-15 (paragraph break omitted). The District Judge continued:

> Before we proceed with cross-examination, ladies and gentlemen, let me
> again give you the admonition that you have been given earlier about the
> use of the audio and video recording that has been admitted into evidence.
> Please keep in mind once again that the transcripts are not evidence. They

were given to you only as a guide to help you follow what was being said. The audio and video recording itself is the evidence. If you notice any difference between the transcripts and what you heard on the tapes or the recordings, you must rely upon what you heard and what you've seen and not what you've read. If you could not hear or understand certain parts of the recording, then you must ignore the transcripts as far as those parts are concerned.

*Id.* at 15-16 (paragraph break omitted); *see also Weir*, 587 F. App'x at 308 (rejecting an argument as to a different jury instruction).

Again, the Court faces a clear and complete record in which Mr. Howe obviously was not ineffective. Because the Sixth Circuit rejected the juror argument on direct appeal, Weir is barred from relitigating the underlying claim on habeas. *Myers*, 198 F.3d at 619; *Wright*, 182 F.3d at 467; *DuPont*, 76 F.3d at 110. Because the juror and instructions arguments are meritless, and because Mr. Howe thoroughly raised and Judge Reeves properly addressed them during the case, Weir shows neither deficient performance nor prejudice. *Mapes*, 171 F.3d at 427.

### 3.    Alleged Trial-Related Errors

Third, Weir says:

Cummulative error denied Weir a fair trial; counsel failed to exam witness or relevant facts, and in totality failed to present a defense. Rule 33 new trial was proper. But for Weir's admission to Det, no case existed, and only circumstantial testimony provided evidence of firearm for 924(c) enhancement. Jury ascertainment of guilt implicated so that (FRE) hearsay rule allowed evidence mechanistically to defeat the ends of justice. Counsel failed to exam witness for conpulsary process on these issues: 1) victom Earnst failed to pick Weir in photo array, but choose a man not at all like defenent. 2) No fingerprints, no DNA or forensic evidence linked Weir to crime, only hearsay. 3) No firearm was recovered, and only Weir contested admission, linked him to defense. 4) witness Applegate has prison record for narcotics, and long drug abuse history. 5.) Witness Applegate had recent arrest in Tazewell TN, prior to cooperating with police 6.) This witness has long criminal relation to Weir. In schemes to feed thier drug addiction and obtain illegal drugs. Her motive and credibility are questionable. Counsel should have moved for a new trial

14

> (Rule 33), as cummulative error resulted in unfair trial and conviction. The
> totality of courts abuse of discretion to admit evidence w/ no limited jury
> instructions (Rule 30(d Ground thre cont, see attachment.

DE #151, at 7 (all as in original). Weir provided further detail in the accompanying

memorandum. DE #151-1, at 5-6. The United States responded in opposition. DE #163,

at 9-10.

This appears to be a multifaceted attack on the substantiality of case proof[7] and

Mr. Howe's overall performance. The Court will endeavor to evaluate each of Weir's

assertions in turn.

First—"counsel failed to exam witness or relevant facts, and in totality failed to

present a defense." The record belies this argument. The Court has reviewed every

transcript from both trials and the pretrial proceedings. Mr. Howe cross examined every

witness presented, thoroughly questioned them on the facts, and vigorously presented a

defense at each trial. Mr. Howe called defensive witnesses, and Weir even testified in his

own defense at the first trial. Howe zealously defended Weir throughout. This claim, for

which Weir provides little detail, is clearly meritless.

Second—Weir's asserted gaps in the case proof. He specifically challenges (1) the

alleged circumstantial nature of some proof; (2) Ernst's photo array identification; (3) the

lack of fingerprints, DNA, or forensic evidence; (4) the lack of a recovered firearm; and

(5) Applegate's criminal and drug abuse histories, as they go to motive and credibility.

No challenge has merit.

The Sixth Circuit has already rejected a sufficiency-of-the-evidence argument and

affirmed both the kidnapping and bank robbery (along with the adjoining gun)

---

[7] This area is largely not cognizable in this posture, but, given the effort to shoehorn a
*Strickland* claim, the Court accounts for the contentions.

convictions. *Weir*, 587 F. App'x at 306-08. The Court has independently reviewed every stitch of the record. Despite the degree to which any evidence may have been circumstantial—and much of it was not circumstantial in any way—the proof was sufficient to convict on all counts. The Sixth Circuit and District Court have already explicitly determined this, and Weir's carping over particular items will not change that.

On the issue of the photo identification, the topic arose at trial, DE #128, at 22-23, and Ernst identified Weir as her kidnapper in open court and explained her exact basis for the identification. *Id.* at 23. Weir does not show that a prior misidentification would have changed the outcome of the trial (and he, notably, presents no proof on the allegation anyway). Concerning the alleged lack of certain evidence—fingerprints, DNA, other forensic, and a recovered firearm—the Sixth Circuit has directly upheld the evidence as sufficient, and the absence of any particular piece or type of evidence identified obviously does not doom any conviction, given the substantial other evidence of Weir's guilt. *See, e.g.*, *United States v. Noland*, Nos. 5:09-176-DCR, 5:14-7352-DCR, 2015 WL 3819958, at *5 (E.D. Ky. June 18, 2015) ("Likewise, [Defendant] has not shown that a defense based on the lack of fingerprint evidence would have sufficiently mitigated the substantial evidence against him to establish a reasonable probability of a different result."), *adopting United States v. Noland*, Nos. 5:09–CR–176–DCR–HAI, 5:14–CV–7352–DCR–HAI, 2015 WL 3819927, at *9 (E.D. Ky. Apr. 23, 2015) ("No reason, based in either law or fact, is offered as to why a lack of fingerprints would have somehow mitigated the substantial evidence against Defendant so as to establish a reasonable probability of a different result."). The Sixth Circuit explicitly upheld the gun convictions based on the evidence presented. *Weir*, 587 F. App'x at 307.

16

As to the proof sufficiency, the District Court summarized, at the first trial:

> The victim testified in the case of the defendant's actions in taking her and throughout this entire ordeal, entire process, it does appear that the defendant had the specific intent. And there was certainly sufficient evidence for the jury to draw that conclusion from his actions, not necessarily just from his words, but also from his actions, the way in which he drove, the way he transported the victim, and all other information that was provided during the course of her testimony.
>
> The second element is that the defendant held the victim with the intent to collect a ransom, reward, or other benefit. And in this case, there is sufficient evidence that would not be collateral to the kidnapping that this defendant intended to -- initially when the person was taken, he was attempting to get money from the victim. That was the initial thought in entering her vehicle. And he did in fact use those bank cards at a later point to obtain those benefits from her. But it's any benefit. As that term has been defined, this defendant's actions would certainly meet the second element.
>
> And, likewise, there's sufficient evidence for the jury to conclude that the defendant -- that the third element is met as well, that the victim was willfully transported in interstate commerce while being kidnapped, seized, confined, abducted, or carried away. It's clear that the victim made known to the defendant she wanted to be released, she did not wish to go with him. He took her against her will with threats of force and violence. He transported her from Kentucky into Ohio, where he tied her to a tree, according to the evidence that has been presented.

DE #130, at 32-33. Judge Reeves later added, as to the gun charge: "The evidence in the case that would support the 924 going to the jury, for example, could include not only the testimony of the victim in the case, Ms. Ernst, but also the admission made by Mr. Weir."

*Id.* at 79.

At the second trial, the District Court explained:

> The evidence in the case would support presenting both the charge under 2113(a), as well as 2113(d) to the jury. Now, the indictment alleges a violation of both sections, so both sections have been alleged. There's been some question earlier about a lesser included offense, which would be subsection (a), but there is sufficient evidence to submit both of those charges to the jury. . . . In this particular case, there is sufficient proof to allow the jury to conclude that that offense in fact occurred. The proof in the case, without restating all of it, is that the individual came into the bank, his movements were such that they caused some concern with the

employees of the bank, including the teller who was subsequently confronted by the person. The individual covered the note that he was filling out, he filled out a note that, according to the teller, did reference shot, as opposed to I will shoot you. . . . So there's all this evidence that's been presented about the activity and the fact that the person put his pocket up -- the jacket up on the counter, there's something in the pocket pointed toward the teller with the note and all of those actions together would support a conclusion. . . . And so the Court believes that there is more than sufficient corroboration of the statement that was given by the defendant and, therefore, that the confession or the admissions made by the defendant can be considered in determining whether the elements have been met under 2113(d). And so for those reasons, based upon all those reasons that the Court has referenced, the Court believes that there is more than sufficient proof to submit the case to the jury and that the jury -- a reasonable juror could conclude that the defendant assaulted and put in jeopardy the life of the tellers and others by the use of a dangerous weapon.

With regard to the 924(c) charge, in this particular case, the defendant is not charged with brandishing or firing, discharging, a weapon. He's charged with possession. And, of course, the government would be required to show that he actually possessed it in furtherance of the crime that he's been charged in Count Three. There is sufficient evidence to support the fact that it was in furtherance. There's statements again, the Court can consider the confession, and there's statements that would indicate that the weapon emboldened the defendant and there's certainly case law in this circuit and others that would say that would be sufficient. But there's also testimony that can be believed, again the same testimony that I referred to earlier, the testimony from the bank teller, as to how the item in the defendant's pocket was actually used to further the offense. There was some hesitation initially by the teller after the hand was placed upon the counter, the jacket with the hand in the pocket and whatever was in the pocket, which the jury could conclude was a firearm that was operable. Of course, it wouldn't have to be loaded under this particular section. But under the circumstances and under that evidence that's presented, the jury could conclude that that furthered the offense, because the teller at that point gave him the money. There was some hesitancy at first, but at the point that he placed his hand upon the counter with an action that appeared to the Court that he had certainly a dangerous weapon or something in his pocket, it does meet the in furtherance prong of that particular section. It would support a conviction under 924(c)(1)(A), subsection (i). So for those reasons, the Court will deny the motion for a judgment of acquittal at this stage of the proceeding.

DE #132, at 102-08 (denying a comprehensive Rule 29 motion) (certain paragraph breaks omitted). The Sixth Circuit endorsed evidence sufficiency as to all convictions. There is no basis for habeas relief founded on an alleged lack of certain evidence.

Finally, concerning Applegate's criminal and drug abuse histories, the jury fully had that information. Two Applegates testified at the second trial, but Weir specifically refers to "*her* motive and credibility," DE #151, at 7 (emphasis added), so the Court will confine its analysis to Cindy, not Donald. Cindy Applegate testified that she had two prior convictions, for "possession of cocaine" and "possession of a forged instrument." DE #131, at 98. She testified that she previously attended AA and NA meetings. *Id.* at 99. She said she is a "recovering addict" from a heroin addiction. *Id.* at 99-100. She testified that she and Weir went to a drug dealer named Hump's house to buy heroin and later got high on it. *Id.* at 114-15. Thus, the jury was fully aware of Applegate's criminal record and drug abuse history, including her criminal involvement with Weir. Petitioner certainly makes no showing that if counsel had mentioned an alleged recent Tazewell arrest (concerning which he presents utterly no proof), the result of the proceeding would have been different.

Third—Rule 33. That Rule permits a court to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Certain time limits apply. *Id.* 33(b). Weir identifies utterly no justification for a new trial. He cites no new qualifying evidence. *See, e.g.*, *United States v. Sypher*, 684 F.3d 622, 626 (6th Cir. 2012). He establishes no other error justifying a new trial. *See, e.g.*, *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (stating a court should grant Rule 33 relief where "the jury's verdict was against the manifest weight of the evidence" or where "substantial

19

legal error has occurred," such as an "error of sufficient magnitude to require reversal on appeal" (internal alteration omitted)); *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (stating a court should grant Rule 33 relief "only in the extraordinary circumstance where the evidence preponderates heavily against the verdict" (internal quotation marks removed)). For the reasons discussed in this opinion, and the ones previously given by the District Court and Sixth Circuit, there is no such error here. Mr. Howe was therefore not ineffective for not filing a Rule 33 motion. *Mapes*, 171 F.3d at 427.

Fourth—cumulative error. Weir claims that "[c]um[]ulative error denied [him] a fair trial" and that "cum[]ulative error resulted in unfair trial and conviction." Because Weir has established no individual error, he has not "support[ed] a finding of cumulative error and which would rise to the level of fundamental unfairness." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). Regardless, "not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). In short, Weir's cumulative error (along with the dependent *Strickland* and new trial theories) "argument fails because there is no cumulation of errors." *United States v. Bankston*, 820 F.3d 215, 234 (6th Cir. 2016).

### 4.    Failing to Represent Offender Characteristics at Sentencing

Finally, Weir argues:

Counsel failed to represent offender charectoristics properly at sentence to show mental health, drug abuse treatment potential work history. Defendant Weir, did present a long history of skilled employment, and education oppurtunities. As well as some possitive drug rehabilitation. The Court was not provided all facts needed as counsel failed to investigate facts or argue departure (s 5K2.0), as shown in affidavit 1. Based on drug

> abuse, Weir is rehabilitatable, once having been a assistant manager at Footlocker store, and area distributor for Kirby vacuum marketing firm. (.See Affidavit #3) Mental health history and drug addiction may contribut to errant conduct. Weir admits a serious drug addiction, otherwise a funtional lifestyle, and reletively little criminal tendency, accept to "stay high" as an addict. The Supreme Court held that prison is <u>not</u> an alternative for rehabilitation. Defendants Sixth Amendment was violated at sentence, when Attorney Howe failed to investigate or argue all offender charectoristics (s 3553(A)).. See attachments on arguements.

DE #151, at 8-9 (all as in original). Weir provided further detail in the accompanying memorandum. DE #151-1, at 6. Weir's third affidavit addresses these matters. DE #151-4. The United States responded in opposition. DE #163, at 10-11.

Review of the record refutes Weir's claim: (1) Mr. Howe set out substantially all these characteristics in the sentencing memorandum; (2) Mr. Howe argued for consideration of these characteristics at sentencing; and (3) the PSR contained a comprehensive assessment of these issues. These aspects of Weir's life were fully before the Court for sentencing consideration.

First—the sentencing memorandum. Mr. Howe called the Court's attention to Weir's "personal circumstances[.]" DE #121 (Sentencing Memorandum), at 4. Counsel wrote about Weir's "mentally and physically abusive childhood," "learning disabilities," and "psychological issues that have been addressed throughout this case[.]" *Id.* at 5. Mr. Howe advocated:

> Mr. Weir was treated for psychological problems throughout his life. In the 1990's he was diagnosed with ADD, Bipolar Disorder and Manic Depression. He was placed on Ritalin from the time he was in the first grade through the eighth grade. On more than one occasion, he was hospitalized or taken to Eastern State in Lexington for these psychological issues. The Court has in its possession the psychological reports resulting from his competency examination. The diagnosis is set out that includes both psychological conditions and substance abuse. The Court can depart downward pursuant to USSG 5H1.3 if it determines that Mr. Weir suffers from mental or emotional conditions individually or in combination when

other offender characteristics are present to an unusual degree. The report supports the departure. In the event that the Court determines that a departure is not appropriate, a variance downward should be granted based on these same conditions.

The psychological reports also include a diagnosis of substance abuse. The Court heard extensive testimony concerning Mr. Weir's use and abuse of heroine as well as other opiates on the dates of both of the offenses as well as on the date his statement was taken. The testimony at trial from Cindy Applegate was on the date of the bank robbery, they immediately left the scene taking the proceeds from the robbery and purchasing drugs. His addiction had risen to the level of disparity with his desire to obtain drugs being the primary factor in obtaining money by whatever means. Pursuant to USSG 5H1.4 drug abuse is also grounds for a departure if to an unusual degree and outside of the heartland of cases. The Court heard extensive testimony concerning these factors. Because of the combination of the psychological component with the substance abuse component, a departure is appropriate. As stated above, in the event the Court does not grant a departure, a variance would be appropriate.

*Id.* at 5-6. Mr. Howe confirmed in the affidavit that he "prepared a Sentencing Memorandum" that made the Court aware of Weir's "background, his circumstances, his drug abuse history, as well as his mental health history." DE #163-1.

Second—the sentencing proceeding. At sentencing, Mr. Howe advocated for a low-end sentence for Weir. Mr. Howe specifically pointed out:

You have someone who, you know, works, shows a propensity to work, has worked in the past. I think that's demonstrated. Continues to have support of some people who are now in the courtroom. Rough childhood in a sense being where he's been raised and the nature of the strictness of how he was raised. I'm sure rebellious. I've got school records. I think we've shared those school records. And it goes from having some diagnoses through, I believe, Dr. Dia Boutwell, which we've taken issue with some of her testing measures, but at least the diagnoses. A history of psychological treatment and/or diagnoses there. And then the run-up of drugs that has just basically -- he was working all the way up until two or three, four, five days prior to this incident occurring. And then now it has just unraveled. So I think it was a combination of the psychological problems along with the addiction problems, which basically turned into abuse problems and landed him exactly where he stands or sits now before this Court.

22

DE #143 (Sentencing Tr.), at 27-28 (paragraph breaks omitted). Mr. Howe orally incorporated his written arguments in the sentencing memorandum. *Id.* at 23. He called the Court's attention to Weir's "addictions and/or the mental health issues[.]" *Id.* at 24.

The Sixth Circuit noted that, at sentencing, "Weir asked the court to consider his mental health and substance abuse issues[.]" *Weir*, 587 F. App'x at 309. The District Court, based at least in part on Mr. Howe's advocacy, "considered all of the pertinent § 3553(a) facts, taking into account Weir's mental health and substance abuse issues[.]" *Id.* The Court of Appeals noted a third time that Judge Reeves considered "Weir's mental health issues and problems with drug abuse" as part of the sentence. *Id.* at 310.

Third—the PSR. This report *thoroughly* documents Weir's characteristics. DE #127, at 24-31. The PSR extensively catalogues Weir's medical and health history. *Id.* at 27-29. It describes, in detail, Weir's substance abuse history. *Id.* at 29-30. After discussing his educational achievements, *id.* at 30, the PSR details Weir's employment record, including periods of employment at a body shop, a Foot Locker store, Kirby Vacuum, and various other jobs. *Id.* at 30-31. The PSR discusses *every one* of the aspects (including the *precise* jobs) about which Weir complains in the habeas filing. Judge Reeves fully had the PSR in front of him and fully considered the content at sentencing.

The record, both at the trial and appellate levels, easily and completely discounts Weir's theory that Mr. Howe failed to raise certain characteristics at sentencing. Weir, thus, in the *Strickland* analysis, shows neither deficient performance nor prejudice. He is entitled to no relief.

### B.    Evidentiary Hearing

Weir requests an evidentiary hearing. DE #151, at 13. The Court must hold one unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Weir's claims do not warrant a hearing; the § 2255 motion filings and case record conclusively show, for the reasons stated above, that Weir's claims fail. There are no contested factual issues that justify a hearing. The record, particularly one centering on hearings and a recorded statement, needs no further development and forecloses relief.[8]

## IV.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard

---

[8]    Weir also requests appointment of counsel. DE #151, at 13. The appointment of counsel in § 2255 proceedings is firmly a matter in the Court's discretion. "In all proceedings brought under [§ 2255], and any subsequent proceedings on review, the court may appoint counsel." 28 U.S.C. § 2255(g). Further, when "the court determines that the interests of justice so require, representation may be provided for any financially eligible person who is seeking relief under section . . . 2255." 18 U.S.C. § 3006A(a)(2)(B); *see also United States v. Baker*, 586 F. App'x 458, 460 (10th Cir. 2014) (collecting cases and noting that a court may decline to appoint counsel "when the issues raised are not unusually complex either legally or factually, and when the merits do not appear colorable").

Weir does not state any particular reason he seeks counsel at this stage. The claims, as discussed above, are not unusually complex and are unfounded in law and fact. Pursuant to the Court's recommendation that Weir's § 2255 motion be denied altogether, the Court also declines to appoint counsel. The case, which is facially developed and analytically clear, does not merit such an appointment. Weir adequately presented his arguments *pro se*.

requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Movant has not made a "substantial showing" as to any claimed denial of rights; his *Strickland* and other claims all conclusively fail. Reasonable jurists would not find the Court's determination on the merits debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V.     RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #151) and issue **NO** Certificate of Appealability.

\*   \*   \*   \*   \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this

decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 24th day of June, 2016.

Signed By:

*Robert E. Wier*

United States Magistrate Judge